# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD LEGOS, | : | No. 3:16cv1917 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| TRAVELERS CASUALTY | : | |
| COMPANY OF CONNECTICUT | : | |
| ONE OF THE TRAVELERS | : | |
| INSURANCE COMPANIES | : | |
| | : | |
| and | : | |
| | : | |
| TRAVELERS CASUALTY | : | |
| COMPANY OF CONNECTICUT | : | |
| ONE OF THE TRAVELERS | : | |
| INSURANCE COMPANIES, | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Plaintiff Ronald Legos asserts a state law underinsured motorist (hereinafter "UIM") claim against his insurance company, Defendant Travelers Casualty Company of Connecticut (hereinafter "Travelers"). Before the court for disposition is Travelers's motion for summary judgment seeking to dismiss the plaintiff's UIM claim pursuant to Federal Rule of Civil Procedure 56(c). The matter has been briefed and is ripe for disposition.

**Background**

On April 29, 2003, the plaintiff and Willard Grasavage (hereinafter "Grasavage") were driving separate automobiles on Route 435 in Elmhurst Township, Pennsylvania. (Doc. 33-5, Def.'s Stmt. Of Mat. Facts (hereinafter "SOF") ¶ 1). While driving, Grasavage steered his underinsured vehicle into the plaintiff's lane of travel and collided with the plaintiff's automobile. (Id.) As a result of the accident, the plaintiff claims that he sustained personal injuries. (Id. ¶ 2).

On April 29, 2005, the plaintiff initiated a third-party lawsuit against Grasavage by filing a Writ of Summons. (Id. ¶ 4). On July 17, 2006, the plaintiff subsequently filed a negligence complaint against Grasavage. (Id. ¶ 4). At the time of the accident, the plaintiff was insured by Travelers, which provided for UIM benefits. (Id. ¶ 5). Thus, on August 29, 2006, plaintiff filed a UIM claim with Travelers. (Id.) Travelers confirmed that a UIM claim had been established. (Id.)

On March 7, 2012, plaintiff signed a settlement document releasing Grasavage from liability in exchange for $75,000. (Id. ¶ 6). Over four years later, on April 23, 2016, plaintiff received a letter from Travelers claiming that the statute of limitations (hereinafter "SOL") on plaintiff's UIM claim had run. (Id. ¶ 7). Travelers advised plaintiff that it closed his UIM file. (Id.)

On August 29, 2016, plaintiff filed a single-count complaint in the Lackawanna Court of Common Pleas asserting a state law breach of contract claim. (Id. ¶ 12). Travelers removed the case to this court on September 20, 2016. (Doc. 1). Subsequent to removal, Travelers moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Pennsylvania's four-year SOL for breach of contract cases precluded the claim. (Doc. 3). At that juncture, we denied Travelers's motion to dismiss, as the factual record had not yet been developed. (Doc. 15). At the conclusion of discovery, on May 1, 2018, Travelers filed the instant motion for summary judgment once again arguing that the SOL has expired. (Doc. 33). The parties have briefed their respective positions and the matter is ripe for disposition.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332(a). Plaintiff Ronald Legos is a citizen of Pennsylvania. (Compl. ¶ 1). Defendant Travelers is incorporated under the laws of the State of Connecticut with its principal place of business in Connecticut. (Doc. 1, Notice of Removal ¶ 13). Additionally, the amount in controversy exceeds $75,000. Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case. See 28

3

U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States[.]").  As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(C)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The

burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

The issue that is once again in contention in this matter is whether the plaintiff's UIM claim is barred by the SOL. The parties agree that the applicable SOL period for this breach of contract claim is four years. They dispute, however, when the SOL period started. Travelers contends that judgment should be granted in its favor because the SOL started to run on March 7, 2012, the date that the plaintiff signed a settlement agreement releasing Grasavage from

liability. Thus, according to Travelers, the SOL expired on March 7, 2016, four months before the plaintiff filed the instant lawsuit.

The plaintiff, on the other hand, argues that the SOL started to run on April 23, 2016, the date that the plaintiffs received a letter from Travelers advising the plaintiff that the SOL on his UIM claim had expired and it would be closing his file, thus effectively denying coverage. For the reasons that follow, we agree with the plaintiff.[1]

As noted above, under Pennsylvania law, the SOL for contract claims is four years. 42 PA. STAT. AND CONS. STAT. ANN. § 5502 (West). The majority of jurisdictions have adopted the view that it is the accrual of the right of action that commences the SOL period to run. See, e.g., Erie Ins. Exch. v. Bristol, 174 A.3d 578, 579–90 (Pa. 2017). The Third Circuit Court of Appeals has explained that "[o]rdinarily, a statute of limitations begins to run from the moment the potential plaintiff has a 'complete and present cause of action.'" Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199, 209 (3d Cir. 2008).

Important to our analysis is Bristol, supra, a case that both parties mention in their analysis that is key in deciding when the SOL begins to run in UM and

---

[1] We acknowledge the Third Circuit's 2007 prediction in State Farm Mut. Auto. Ins. Co. v. Rosenthal, 484 F.3d 251, 253 (3rd Cir. 2007) that the Pennsylvania Supreme Court would hold that the limitations period on a UIM claim begins to run when the insured party settles with an adverse party for less than the value of the insured's damages. As explained below, the 2017 Pennsylvania Supreme Court decision in Bristol has clarified state law on this issue.

6

UIM cases. Specifically, the question here is whether the plaintiff's SOL began to run when the plaintiff settled his claim against the underinsured tortfeasor; or, when the defendant effectively denied the UIM claim.

In Bristol, a case heavily relied on by the plaintiff for the proposition that the SOL began to run when Travelers closed his UIM claim, the Pennsylvania Supreme Court held that the SOL begins to run in insurance cases when the insured's cause of action accrues, i.e., when the insurer is alleged to have breached its duty under the insurance contract. Bristol, 174 A.3d at 579–90. According to the defendant, Bristol does not apply to UIM claims, only uninsured (hereinafter "UM") claims. We disagree.

As noted by the plaintiff, although the Bristol court only explicitly included UM claims in its holding, a closer look makes it clear that the holding extends to UIM claims as well. See Bristol, 174 A.3d at 579–90. Throughout the entire opinion, the Bristol court repeatedly referred to UM/UIM claims collectively, at no point distinguishing them. Id.

For example, the policy in dispute in Bristol contained both UM and UIM coverage. Id. at 587-590. This fact, in conjunction with § 5502 of the Judicial Code, which defined the method of computing periods of limitation, persuaded the Pennsylvania Supreme Court to note that "applying these general contract principles to the enforcement of an insured's UM/UIM claim, the [SOL] would

7

begin to run when the insured's cause of action accrued, i.e., when the insurer is alleged to have breached its duty under the insurance contract." (emphasis added). Id. at 586.

Further, it is clear that the issue on appeal in Bristol pertained to both UM and UIM claims. When the Pennsylvania Superior Court heard this case, the court's holding, which was ultimately reversed, not only applied to UM claims, but it also applied to insurance contract claims in general, which includes UIM claims. Erie Ins. Exch. v. Bristol, 151 A.3d 1161 (Pa. Super. Ct. 2016), rev'd, 174 A.3d 578 (Pa. 2017). Thus, on appeal, the Pennsylvania Supreme Court was deciding whether the SOL for UM and UIM motorist claims begins running "when a claimant injured in an automobile accident first learns that the other driver is uninsured or underinsured." (emphasis added). Bristol, 174 A.3d at 579–80. Bristol reversed the Superior Court's decision, holding that "[SOL] principles attending contract claims apply, and that the running of the statute is commenced upon an alleged breach of a contractual duty, which [is] occasioned by the insurer's denial of coverage or refusal to arbitrate." Id. at 580.

For these reasons, we are persuaded that the Bristol court intended to apply its SOL analysis to both UM and UIM claims, and we will deny the defendant's motion for summary judgment.

**Conclusion**

Because it is undisputed that Travelers denied coverage on April 23, 2016, it follows that on that date the plaintiff had an accrued cause of action to initiate a lawsuit. The SOL period commenced on April 23, 2016, when the defendant breached the insurance contract. Consequently, the plaintiff had until April 23, 2020—four years after Travelers breached the terms of the UIM contract—to file his UIM claim. The plaintiff filed his UIM claim on August 29, 2016. The plaintiff's suit, therefore, is not time barred. Accordingly, we will deny the defendant's motion for summary judgment. An appropriate order follows.

Date: October 11, 2018  BY THE COURT:

s/ James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**